***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion *Page 2 
and Award of the Deputy Commissioner, with some modifications, and enters the following Opinion and Award.
 **********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The employee-employer relationship existed at the time of the alleged January 18, 2003 and alleged March 8, 2006 injuries.
2. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
3. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
4. Wausau Insurance Company (I.C. File No. 570691, alleged date of injury January 18, 2003), and St. Paul Travelers Insurance Company (I.C. File No. 615291, alleged date of injury March 8, 2006) were the carriers on the risk at the time of the alleged injuries.
5. The dates of the alleged injuries are on or about January 18, 2003 (I.C. File No. 570691) and on or about March 8, 2006 (I.C. File No. 615291).
6. Plaintiff's claims (I.C. File Nos. 570691 and 615291) were consolidated by Order filed by Executive Secretary Tracey H. Weaver on July 31, 2007.
7. The parties were subject to the North Carolina Workers' Compensation Act at the time of the alleged injuries, as the employer(s) employed the requisite number of employees to be bound under the provisions of the Act. *Page 3 
8. Defendants Mid-America Apartment Communities and Wausau Insurance Company (hereinafter "Defendants Mid-America/Wausau") initially treated the alleged injury of January 18, 2003, as a "medical-only" claim. Since that time, Defendants Mid-America/Wausau have denied plaintiff's right to any additional medical treatment or any indemnity compensation pursuant to N.C. Gen. Stat. §§ 97-25.1 and 97-47. Defendants Mid-America/Wausau have further denied that plaintiff's alleged RSD and/or depression was caused or materially aggravated by plaintiff's alleged January 18, 2003 work accident.
9. Defendants Hermitage @ Beechtree and St. Paul Travelers (hereinafter "Defendants Hermitage/Travelers") have denied plaintiff's alleged injury of March 8, 2006 as being compensable under the North Carolina Workers' Compensation Act. Defendants Hermitage/Travelers further deny that plaintiff's alleged RSD and/or depression was caused or materially aggravated by plaintiff's alleged March 8, 2006 injury.
10. Plaintiff's average weekly wage for the alleged injuries will be determined by Form 22s to be submitted at the hearing.
11. Plaintiff has not missed time from work as a result of her alleged January 18, 2003 injury or her alleged March 8, 2006 injury.
12. Plaintiff will not assert that Defendants Mid-America/Wausau have waived their right to oppose the production of Wausau Insurance Company's claims file or its contents by producing the specific log notes referenced in subparagraph (j) of the Pre-Trial Agreement or the BOCOMP printout referenced in subparagraph (k) of the Pre-Trial Agreement.
 **********
The parties entered into evidence the following Stipulated Exhibits:
 STIPULATED EXHIBITS *Page 4 
1. Stipulated Exhibit No. 1 is the medical records.
2. Stipulated Exhibit No. 2 is the Pre-Trial Agreement.
3. Stipulated Exhibit No. 3 consists of the Industrial Commission forms and filings.
4. Stipulated Exhibit No. 4 is the recorded statement of plaintiff.
5. Stipulated Exhibit No. 5 is correspondence to plaintiff from Wausau Claims Case Manager John P. McClanahan.
6. There is no Stipulated Exhibit No. 6.
7. Stipulated Exhibit No. 7 is Mid-America/Wausau's 11/5/07 discovery requests to plaintiff.
8. Stipulated Exhibit No. 8 is Hermitage/Travelers' 11/15/07 discovery requests to plaintiff.
9. Stipulated Exhibit No. 9 consists of plaintiff's discovery responses.
10. Stipulated Exhibit No. 10 consists of plaintiff's supplemental responses to Mid-America/Wausau's discovery requests.
11. Stipulated Exhibit No. 11 consists of plaintiff's supplemental responses to Hermitage/Travelers' discovery requests.
12. Stipulated Exhibit No. 12 consists of plaintiff's supplemental discovery responses.
13. Stipulated Exhibit No. 13 is the 1/24/08 joint letter from Mid-America/Wausau and Hermitage/Travelers to plaintiff requesting that she supplement her discovery responses.
14. Stipulated Exhibit No. 14 consists of three letters, (two are dated 7/11/07 and one is dated 8/9/07), from plaintiff's counsel, to Wausau Claims Adjuster Keisha Durante.
 ********** ADDITIONAL EXHIBITS *Page 5 
Plaintiff offered the following exhibit into evidence:
 1. Plaintiff's Exhibit No. 1 consisting of handwritten notes.
Defendants Mid-America/Wausau submitted the following exhibits into evidence:
 1. Defendants 1 — Exhibit No. 1, Wausau claim notes; and
 2. Defendants 1 — Exhibit No. 2, the BOCOMP print out.
Defendants Hermitage/Travelers submitted the following exhibits into evidence:
 1. Defendants 2 — Exhibit No. 1, a December 21, 2005, letter from plaintiff to the Human Resources Department of Hermitage @ Beechtree.
 2. Defendants 2 — Exhibit No. 2, a March 31, 2006 marketing specialist job description.
 3. Defendants 2 — Exhibit No. 3, Mid-America Apartment Communities Facts About Workers' Compensation documentation.
 4. Defendants 2 — Exhibit No. 4, plaintiff's July 29, 2002 employment application.
 **********
According to the Pre-Trial Agreement, the parties' issues consist of the following:
 PLAINTIFF'S ISSUES
1. Whether plaintiff sustained injuries by accident arising out of and in the course of her employment with defendant-employer(s) on January 18, 2003 and on or about March 8, 2006?
2. If so, what benefits is plaintiff entitled to receive under the North Carolina Workers' Compensation Act for said injuries? *Page 6 
3. Whether plaintiff is entitled to obtain a second opinion evaluation as to the extent of permanent partial disability pursuant to N.C. Gen. Stat. § 97-27(b) for the alleged injury of January 18, 2003?
 DEFENDANTS MID-AMERICA AND WAUSAU'S ISSUES
1. Whether plaintiff's claim for additional medical benefits is barred by N.C. Gen. Stat. § 97-25.1?
2. Whether plaintiff's claim for any additional medical and/or indemnity benefits is barred by N.C. Gen. Stat. § 97-47?
3. Whether plaintiff was entitled to a second opinion rating evaluation pursuant to N.C. Gen. Stat. § 97-27?
4. If so, is plaintiff's claim for a second opinion rating evaluation more than five (5) years after her alleged date of injury time-barred?
5. If plaintiff's claim is not time-barred, whether plaintiff has met her burden of proving that plaintiff's pre-existing alleged RSD and/or depression was caused or materially exacerbated by her alleged January 18, 2003 work incident?
6. If so, to what benefits is plaintiff entitled?
7. If plaintiff's pre-existing alleged RSD and/or depression are found to be caused or materially aggravated by the alleged January 18, 2003 and March 8, 2006 incidents, which carrier is responsible and/or in what proportion?
 DEFENDANTS HERMITAGE AND TRAVELERS' ISSUES
1. Whether plaintiff has met her burden of proving she sustained a compensable injury by accident or occupational disease to her right foot on March 8, 2006? *Page 7 
2. Whether plaintiff has met her burden of proving her pre-existing alleged RSD and/or depression are caused or materially aggravated by the alleged March 8, 2006 work incident?
3. If so, to what benefits, if any, if plaintiff entitled?
4. If plaintiff's pre-existing alleged RSD and/or depression are found to be caused or materially aggravated by the alleged March 8, 2006 and alleged January 18, 2003 work incidents, which carrier is responsible and/or in what proportion?
 **********
Based upon the competent and credible evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 58 years old, born January 5, 1950. She worked for defendant-employer Mid-America Apartment Communities (hereafter, "Mid-America") and lived at the Hermitage @ Beechtree (hereafter, "Hermitage"), which is one of Mid-America's three local apartment complex properties.
2. Plaintiff has a long history of bilateral lower extremity/foot problems dating back to at least 1995. Plaintiff testified that she injured her left foot in March 1995 in a "freak accident" when she walked into exposed iron prongs of a bed frame cutting the vein on top of her foot. Plaintiff received treatment from Dr. Rozear, Dr. Grey and Dr. Huh. Plaintiff testified that in 1996, she developed right lower extremity pain as a result of the misplacement of an EMG needle. No medical records directly following either incident were submitted into evidence. Plaintiff testified that following her alleged 1995 injury, she was in such pain that she could not *Page 8 
walk and could not work. She testified that she stayed off of her feet and out of work for approximately nine months due to pain.
3. Plaintiff treated with Dr. Marvin Rozear, a board certified neurologist, on March 28, 1996. Dr. Rozear diagnosed plaintiff with chronic pain in the left foot of unknown etiology. Plaintiff followed up with Dr. Rozear on April 11 and 14, 1998 with left foot and leg pain and on November 1, 1999. Dr. Rozear opined that RSD and CRPS are diagnosed by the presence of burning pain, color changes (pallor to beet red or mottled appearance), swelling, changes in hair growth, skin texture and moisture level of skin, changes in nails, changes in bones and allodynia (intense pain upon slight stimulus). Although plaintiff did complain of disproportionate pain (allodynia) and had some mild discoloration over the dorsum of the left foot, Dr. Rozear did not diagnose her with RSD.
4. On September 3, 1998, plaintiff began treating with Dr. Billy Huh, a physician board-certified in anesthesiology and pain medicine. Plaintiff presented complaining of right leg pain and right foot pain. Specifically, plaintiff complained of heel pain with trouble walking and sleeping. Plaintiff indicated that she could only drive for 30 minutes or work for two hours per day. Plaintiff had been out of work for the last one and one-half years due to pain and had changed jobs five times during the prior two years. Dr. Huh diagnosed plaintiff with plantar fasciitis of the right foot.
5. Between November 2, 1998 and July 29, 1999, Plaintiff presented to Dr. Huh on eight occasions. At each visit plaintiff complained of diffuse right lower extremity pain. On the December 1, 1998 visit, plaintiff also complained of right hand pain. Plaintiff did not mention left side pain. *Page 9 
6. Plaintiff also reported to Dr. Huh on June 29, 1999 that an EMG had induced chronic sciatic pain. Plaintiff did not complain of left lower extremity pain, sweating, hair growth changes or changes in skin temperature. Dr. Huh diagnosed EMG induced sciatic neuralgia.
7. On December 16, 1999, Dr. Huh first diagnosed plaintiff with reflex sympathetic dystrophy (hereafter "RSD") of the left lower extremity. Dr. Huh indicated that RSD is primarily a clinical diagnosis and is not generally made by imaging or diagnostic procedures. On December 16, 1999, plaintiff complained of left leg pain and gave a history of her 1995 accident and injury to her left foot. Dr. Huh is of the opinion that certain symptoms are very consistent with RSD: swelling, high sensitivity to touch, tingling sensation and cold intolerance. At this visit plaintiff had some allodynia and some swelling and right lower extremity neuropathy.
8. On February 1, 2000, plaintiff presented to Dr. Mark Easley, an orthopaedic surgeon, complaining of right foot pain. Dr. Easley diagnosed atypical plantar fasciitis.
9. Plaintiff returned to Dr. Huh on February 15, 2000 with symptoms similar to her December 1999 visit. Plaintiff's right lower extremity diffuse tenderness was worse than the left. Diffuse tenderness was plaintiff's only sign of RSD at this visit.
10. On May 28, 2001, plaintiff had a visit with Physician's Assistant Allison Taylor who works under the supervision of Dr. Huh. Following that visit, plaintiff did not seek treatment with Dr. Huh from May 28, 2001 until June 16, 2005, a period of four years.
11. Plaintiff began working for Mid-America as a part-time leasing consultant on August 10, 2002. Plaintiff's supervisor was Linda Edwards. As a part-time leasing consultant, plaintiff's job duties were to answer the telephone, show apartments and prepare paperwork for leases. Plaintiff worked 30 hours or more per week. She worked 10:00 a.m. to 4:00 p.m. on Saturdays, 1:00 p.m. to 5:00 p.m. on Sundays, and time during three days during the week. *Page 10 
12. After working as a part-time leasing consultant, plaintiff later worked as a leasing agent and marketing specialist. Plaintiff was supervised by Phillip Boatright and typically worked 10:00 a.m. to 5:00 p.m., Monday through Friday.
13. On October 3, 2002 and October 28, 2002, plaintiff sought treatment with Dr. Cara B. Siegel at Raleigh Orthopaedic Clinic for evaluation of her left foot following an alleged work-related injury she sustained in February 2002 while working for a different employer when she walked into a water meter. Plaintiff inaccurately reported to Dr. Siegel that she had not previously had any left foot problems. Plaintiff's medical records reveal that plaintiff had treated for both left and right lower extremity complaints since approximately September 21, 1995. While plaintiff reported to Dr. Siegel that she experienced, swelling and constant pain, numbness and tingling, Dr. Siegel's examination revealed no swelling and a full range of motion. X-rays revealed no obvious fracture, but there was the possibility of degenerative changes in the mid foot. Dr. Siegel diagnosed chronic foot pain with mild degenerative changes. Plaintiff reported being concerned about the venous supply and swelling in her leg on October 28, 2002, and Dr. Siegel reiterated that her examination did not show any swelling.
14. Plaintiff claims that while working for Mid-America on January 18, 2003, she tripped over high carpet and fell on the sharp point of her cane, injuring her left calf/ankle and causing a large knot to appear on her left leg.
15. On January 23, 2003, plaintiff filed a Form 18, Notice ofAccident to Employer and Claim of Employee, Representative, orDependent, (I.C. 570691), on her own behalf, indicating that she injured her left foot, left leg and right leg. She stated, "I fell walking to my desk-my foot I think turned." This claim was assigned IC number 570691. This claim has not been admitted on a Form 60 or denied on a Form 61 as it was initially deemed "medical only." *Page 11 
16. On January 23, 2003, plaintiff presented to Doctors' Urgent Care Centre. Plaintiff reported that she fell at work while walking to her desk when she stumbled on the carpet. She complained of left leg pain and a contusion to her right leg. She reported a history of torn ligaments in her left ankle. She complained of numbness from the left anterior ankle to the toes. Plaintiff had full range of motion and no sensory deficit on exam.
17. On February 1, 2003, plaintiff presented to Doctors' Urgent Care Centre for a re-check of her right and left legs. Plaintiff reported that she felt worse. She reported that she woke up with left leg pain and was concerned about a blood clot. Plaintiff was diagnosed with a leg strain and instructed to restart her medications, Celebrex, Skelaxin and Flexeril. Plaintiff was rechecked on February 7, 2003 and February 19, 2003.
18. On February 25, 2003, plaintiff called to report that her circulation did not feel right. She reported that her pain was so bad that she needed pain medication, not anti-inflammatory medication. Plaintiff was advised that she should come in to be evaluated. Plaintiff was referred to Raleigh Orthopaedic Clinic.
19. On March 3, 2003, plaintiff presented to Raleigh Orthopaedic Clinic. Plaintiff completed a "New Problem Questionnaire." On the questionnaire, plaintiff reported experiencing swelling and throbbing since January 20, 2003. She reported that her whole left leg throbbed, but she had less pain when she was resting. Plaintiff reported having been seen for a similar event by a Duke pain clinic in 1995. She did not indicate she was experiencing any aching, numbness, pins and needles, burning or stabbing sensation. She noted on the questionnaire that her aunt died as a result of circulation problems/vascular disease.
20. On March 3, 2003, plaintiff was evaluated at Raleigh Orthopaedic Clinic by Physician's Assistant Tom Butler. Plaintiff did not report to Mr. Butler that she had pre-existing *Page 12 
RSD. Plaintiff, on exam, complained of left lower extremity pain circumferentially. Plaintiff was referred to physical therapy. Mr. Butler's examination did not reveal any signs of bruising, ecchymosis, hyperesthesia, swelling, color change, temperature change, trophic changes, or allodynia present in either plaintiff's left or right lower extremity. These are conditions that can be indicators of RSD/chronic regional pain syndrome (hereafter "CRPS").
21. On April 21, 2003, plaintiff presented to Dr. Daniel J. Albright at Raleigh Orthopaedic Clinic. This was the only time Dr. Albright personally saw plaintiff. Plaintiff's chief complaints were "vein bulging" in her right ankle and a sensation of vague weakness across the anterior or front part of the right ankle. On examination, Dr. Albright did not observe any signs of bruising, ecchymosis, hyperesthesia, swelling, color change, temperature change, trophic changes, or allodynia in either plaintiff's left or right lower extremities. Plaintiff did not report to Dr. Albright that she had a pre-existing diagnosis of RSD. It is Dr. Albright's opinion that plaintiff did not have RSD on April 21, 2003.
22. On April 21, 2003, Dr. Albright released plaintiff from his care with no additional treatment recommendations and a diagnosis of resolved left ankle strain, sprain and contusion. He noted that plaintiff could follow up with a personal physician or vascular surgeon for evaluation of her "vein bulging" complaints. He noted that these complaints were not part of her workers' compensation claim, that plaintiff did not suffer any impairment and that plaintiff had a 0% permanent partial impairment rating. Dr. Albright returned plaintiff to full-duty work without any restrictions, indicating that no follow up was needed. Although plaintiff's diffuse, non-anatomic complaints could be consistent with RSD, Dr. Albright is of the opinion that plaintiff did not suffer from RSD at the time he was treating her. *Page 13 
23. As of the June 5, 2008 hearing, plaintiff had not missed any time from work as a result of her January 18, 2003 injury.
24. Defendants Mid-America and Wausau did not provide plaintiff with any additional medical treatment following plaintiff's April 21, 2003 appointment with Dr. Albright.
25. On July 11, 2003, John P. McClanahan, claims case manager for Wausau, sent plaintiff correspondence indicating that defendants would not be providing her with any additional medical treatment.
26. The "Claim Notes" (Defendants 1, Exhibit No. 1) and the BOCOMP printout (Defendants 1, Exhibit No. 2) reveal that the date the last check was issued for payment of medical expenses in plaintiff's January 18, 2003 claim was July 31, 2003. The "Claim Notes" exhibit does not indicate that anyone at Wausau told plaintiff that additional medical treatment beyond her April 21, 2003 appointment with Dr. Albright would be authorized. Although the BOCOMP printout references this January 18, 2003 claim as "medical only" defendants denied the compensability of the claim on their Form 33R response to plaintiff's request for hearing filed October 23, 2007.
27. Plaintiff called Dr. Albright's office on July 21, 2003 complaining of circulation problems and that her prescription for four physical therapy visits had expired. In response, Dr. Albright renewed plaintiff's physical therapy prescription and gave plaintiff the name for a vascular referral and the name of a foot and ankle specialist.
28. On November 7, 2003, plaintiff presented to Dr. John Gray's physician assistant complaining of left lower extremity pain in the anterior compartment from her January 18, 2003 accident. Plaintiff subsequently presented to Dr. Lawrence Higgins, an orthopaedic surgeon, on March 8, 2004. Plaintiff gave a history of her January 18, 2003 fall and complained of pain in the *Page 14 
mid aspect of her left anterior and anterolateral tibia. Dr. Higgins diagnosed a muscle contusion of the left leg.
29. Plaintiff alleged that she re-injured her left foot on or about May 15, 2005, when walking up steps at work. She claimed that she developed pain in her left calf and reported to Dr. Higgins that she believed she felt a blood vessel break in her ankle. Dr. Higgins noted on examination that he did not see any visible broken blood vessel.
30. Plaintiff did not report the alleged May 15, 2005 incident to defendant-employer and did not file a claim with the Industrial Commission.
31. After a four (4) year gap in treatment, plaintiff returned to Dr. Huh on June 16, 2005 complaining of lower extremity pain. Dr. Huh's physical examination of plaintiff revealed worsening left lower extremity pain, mild edema, and allodynia. On August 19, 2005, Dr. Huh diagnosed Plaintiff with CRPS/RSD, based upon her subjective presenting symptoms. Dr. Huh is of the opinion, to a reasonable degree of medical certainty, that plaintiff had RSD or CRPS (terms which he used interchangeably). Dr. Huh is further of the opinion that plaintiff's January 18, 2003 fall at work exacerbated and was a material aggravation of her pre-existing RSD. Dr. Huh is of the opinion that it is very common for a person who already has RSD to have an aggravation of his or her condition and an exacerbation of pain in the injured area if they are injured. He indicated that even if the doctors who treated plaintiff at the time did not find symptoms of RSD, he still related it to her January 18, 2003 fall. The Full Commission gives little weight to Dr. Huh's opinion that plaintiff has RSD which is causally related to her January 18, 2003 fall at work.
32. On October 5, 2005, plaintiff returned to Dr. Higgins complaining of left leg pain. Dr. Higgins indicated plaintiff's left leg pain was of unclear etiology. *Page 15 
33. On December 20, 2005, plaintiff presented to Dr. Joan Jordon, a physician who is board-certified in internal medicine, to establish a primary care relationship. Plaintiff requested a cholesterol check and complained of chronic left leg pain and gave a history of RSD.
34. On January 4, 2006, plaintiff complained to Dr. Huh of persistent swelling and tingling in her left foot and had mild edema of her left lower extremity.
35. In February 2006, plaintiff began working as a marketing specialist for defendant-employer. As a marketing specialist, plaintiff was responsible for making contact with potential customers. As of January 20, 2006, plaintiff's duties involved performing 25 marketing calls per week (75 visits) for each local Mid-America property (Reserve at Brier Creek, Hermitage @ Beechtree and Waterford Forest). Performing these calls involved visiting potential customers, such as Crabtree Valley Mall or Cary Town Center, and distributing literature about Mid-America's community and apartment rentals.
36. On March 8, 2006, plaintiff presented to Dr. Andrew Milner, a doctor of podiatric medicine, complaining of right foot pain and walking more than usual at a new position. Dr. Milner diagnosed plaintiff with plantar fasciitis of the right foot. He wrote a return to work note for plaintiff with restrictions of wearing athletic shoes and periods of rest and prescribed stretches and massage. At plaintiff's request, the note was modified on March 24, 2006 requiring shorter rest periods.
37. Plaintiff alleged that she aggravated her RSD in her left foot on March 8, 2006 when she experienced a recurrence of plantar fasciitis. Plaintiff has filed a claim for this condition (I.C. 615291), which defendants have denied. *Page 16 
38. In March/April of 2006, plaintiff's standard number of off-site marketing calls was reduced to 20 per week, per property (60 visits), with the additional five calls per property, per week (15 calls), were to be made by telephone.
39. On May 15, 2006, plaintiff gave Dr. Jordon a history of two workers' compensation injuries: a left foot injury in May 2005 while climbing steps and a February 2006 right foot injury while visiting 75 businesses per week. Plaintiff gave a history of RSD and the 1995 freak accident. She also complained of some depression, anxiety and insomnia and worry about being evicted from her apartment. Plaintiff did not mention a January 18, 2003 injury. Dr. Jordon prescribed Xanax, follow up at a pain clinic and a psychiatric referral.
40. On June 8, 2006, plaintiff returned to Dr. Jordon with a migraine and was given medication and again referred for a psychiatric appointment.
41. Dr. Jordon is of the opinion that chronic pain and migraines can cause anxiety, but has no opinion regarding a causative link between plaintiff's allegations of worsening pain after her January 2003 injury and her anxiety. Dr. Jordon's indications of plaintiff having RSD are based upon plaintiff's reports. Dr. Jordon did not observe any of the objective hallmarks that often accompany RSD.
42. On a September 13, 2006 visit with Dr. Huh, plaintiff complained that her pain had spread to her left hand. Dr. Huh's impression was of CRPS of the left foot, spreading to the left hand.
43. Plaintiff again saw Dr. Milner on June 18, 2007. Dr. Milner diagnosed chronic plantar fasciitis and prescribed a new "New Balance" athletic shoe every four months.
44. Dr. Milner is of the opinion that the level of activity can contribute to plantar fasciitis, but is only one of several factors, including, age, weight, biomechanics of the foot and a *Page 17 
history of plantar fasciitis that can contribute to the condition. According to Dr Milner plantar fasciitis is not caused by an increase in activity or walking. Dr. Milner explained that a patient's level of activity is contributory, but that it is only one of several factors that contribute to a patient having the condition. In Dr. Milner's opinion, plantar fasciitis is "very common" and is characterized as an "ordinary disease of life." Plantar fasciitis is so common that it is in the top five conditions he treats in his office. Dr. Milner indicated plantar fasciitis is "probably the one most common problem I see starting about the age of 16, 17 years old on up to geriatric age." Dr. Milner often sees plantar fasciitis in individuals with sedentary jobs. Dr. Milner is of the opinion that there is no casual connection between walking or increased activity and plantar fasciitis, that both of those factors are only contributory to the condition, and that plaintiff-employee's increased activity as a marketing specialist is only a contributing factor to the condition, but not significant. The Full Commission gives great weight to the opinions of Dr. Milner. At the time Dr. Milner saw plaintiff, she did not exhibit symptoms of RSD.
45. Plaintiff continued to have similar complaints on February 9, 2007 and May 16, 2007. On September 13, 2006, plaintiff had complained that her pain had spread to her left hand. Dr. Huh is of the opinion that plaintiff's RSD had progressed to her left upper extremity, that plaintiff had allodynia of the left hand as well as the left foot, that RSD can progress and affect other limbs and other sides of the body, and that such a progression is not unusual.
46. After plaintiff failed to respond to conservative treatment, on March 26, 2007 and May 16, 2007, Dr. Huh recommended that plaintiff have a trial spinal cord stimulator. Dr. Huh is of the opinion that conservative treatment is often not effective in RSD patients. Furthermore, the drugs that are available for conservative treatment often have many unpleasant side effects. Dr. Huh recommends a trial of the spinal cord stimulator first. Plaintiff would receive a psychological *Page 18 
assessment first and then have a one-week trial of the spinal cord stimulator. If plaintiff obtains 50% or more pain relief, she is a candidate for a permanent device in the opinion of Dr. Huh.
47. Plaintiff testified at hearing that she had never had any problems with her right foot prior to March 8, 2006 and had never had plantar fasciitis. Plaintiff did not note prior plantar fasciitis treatment in her discovery. Plaintiff's medical records, however, indicate that she was seen by Dr. Stephen Lang, an orthopaedic surgeon, on August 18, 1998 and on October 5, 1998, and was diagnosed with a right plantar fascial tear. Dr. Huh diagnosed plantar fasciitis of the right foot on September 3, 1998, November 2, 1998 and December 1, 1998. Plaintiff saw Dr. Mark Easley on February 1, 2000 and was diagnosed with atypical plantar fascitis. Plaintiff sought treatment for plantar fasciitis on January 31, 2000.
48. Dr. Michael Kerzner, a physician, board-certified in podiatry, was retained by defendants Hermitage and Travelers to perform a medical records review. Dr. Kerzner is of the opinion that plaintiff does not have RSD. Based on medical records, the provided job description, the hours worked and level of required activity, Dr. Kerzner does not believe that plaintiff's suspected plantar fasciitis is directly related to her job. Dr. Kerzner is of the opinion that plantar fasciitis is a very common condition and an ordinary disease of life. Dr. Kerzner testified that he reviewed plaintiff's medical records from Dr. Milner and explained that if plaintiff's plantar fasciitis had aggravated her preexisting RSD, he would have expected Dr. Milner to have noted more significant objective and identifiable clinical signs during the physical examination.
49. None of the numerous doctors consulted by plaintiff, with the exception of Dr. Huh, have diagnosed plaintiff with RSD/CRPS. Dr. Huh, although he diagnosed plaintiff with RSD/CRPS, did not observe any of the hallmark conditions which are found with RSD/CRPS except mild intermittent swelling and allodynia. *Page 19 
50. Plaintiff has failed to establish by the greater weight that she has RSD/CRPS.
51. Plaintiff sustained a compensable injury by accident on January 18, 2003 resulting in a left ankle strain/sprain/contusion.
52. As of the date of the hearing before the Deputy Commissioner, plaintiff had not missed any time from work as a result of her January 18, 2003 fall and no medical treatment was required to effect a cure, provide relief, or lessen her disability from this compensable injury after her release by Dr. Albright on April 21, 2003.
53. Plaintiff had pre-existing plantar fasciitis.
54. Plaintiff has failed to prove by the greater weight of the evidence that her job was a significant contributing factor to the development or aggravation of her plantar fasciitis on March 8, 2006.
55. Plantar fasciitis is an ordinary disease of life to which the general public is equally exposed. Plaintiff's job as a marketing specialist did not place her at an increased risk of developing plantar fasciitis. Indeed, it is a disease common in people in sedentary employment.
56. Plaintiff has failed to prove by the greater weight that her anxiety and depression were caused by or significantly contributed to by her compensable left ankle strain/sprain/contusion.
 **********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 20 
1. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment with defendant Mid-America on January 18, 2003 to her left ankle in the form of a strain/sprain/contusion. N.C. Gen. Stat. § 97-2(6) (2007).
2. Plaintiff failed to prove by the greater weight of the evidence that she has CRPS/RSD. Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory BusinessFurniture, 353 N.C. 227, 538 S.E.2d 912 (2000).
3. Plaintiff failed to prove by the greater weight of the evidence that she sustained a compensable injury by accident arising out of and in the course and scope of her employment on March 8, 2006 to her right foot resulting in plantar fasciitis. N.C. Gen. Stat. § 97-2(6) (2007).
4. The greater weight of the evidence establishes that plaintiff's job duties as a marketing specialist were not a significant contributing factor to the development or aggravation of her plantar fasciitis on March 8, 2006. Plaintiff's job duties as a marketing specialist did not place her at an increased risk of developing plantar fasciitis. N.C. Gen. Stat. § 97-53(13) (2007);Rutledge v. Tultex Corp.,308 N.C. 85, 301 S.E.2d 359 (1983). March 8, 2006
5. Plaintiff failed to prove by the greater weight of the evidence that her January 18, 2003 work injury either caused or materially aggravated her anxiety and/or depression. Vandiford v. StewartEquip. Co., 98 N.C. App. 458, 391 S.E.2d 193 (1990);Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003.
6. Plaintiff is entitled to a second opinion evaluation and rating of her left ankle on the percentage of her permanent partial disability, if any, resulting from the compensable January 18, 2003 strain/sprain/contusion, as the condition existed on April 21, 2003. N.C. Gen. Stat. § 97-27(b) (2007).
 ********** *Page 21 
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim for additional benefits related to her January 18, 2003 compensable injury is DENIED at this time. (I.C. File No. 570691).
2. Plaintiff's claim for a March 8, 2006 occupational disease or injury by accident to her right foot is DENIED. (I.C. File No. 615291).
3. Defendants Mid-America and Wausau shall provide a second opinion evaluation and rating of the percentage of permanent partial disability of plaintiff's left ankle resulting from the compensable strain/sprain/contusion on January 18, 2003.
4. Defendants Mid-America/Liberty shall pay the costs of these proceedings.
This the ___ day of December 2009.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER